(C. D. 970)

AMERICAN IMPORT CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 12, 1945)

*Lawrence & Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Dorothy C. Bennett,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The merchandise in question consists of various Mexican earthenware articles assessed for duty at 50 per centum ad valorem and 10 cents per dozen pieces under paragraph 211 of the Tariff Act of 1930. The plaintiff claims that the articles are properly dutiable at 15 or 20 per centum ad valorem under paragraph 210. So far as pertinent the paragraphs in question read as follows:

PAR. 210. Common yellow, brown, red, or gray earthenware, plain or embossed, composed of a body wholly of clay which is unwashed, unmixed, and not artificially colored; * * * all the foregoing not ornamented, incised, or decorated in any manner, and manufactures wholly or in chief value of such ware, not specially provided for, 15 per centum ad valorem; ornamented, incised, or decorated in any manner, and manufactures wholly or in chief value of such ware, not specially provided for, 20 per centum ad valorem; * * * *.

PAR. 211. Earthenware and crockery ware composed of a nonvitrified absorbent body, * * * including * * * ornaments, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware; * * * painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 10 cents per dozen pieces and 50 per centum ad valorem.

At the trial 18 exhibits were admitted in evidence as representative of the imported merchandise.

Exhibit 1, numbered 3016, is a pig bank composed of a light gray clay, crudely glazed, the decorations consisting of painted stripes in red, blue, and green.

Exhibit 2, numbered 3029, is a crudely made plate, 9 inches in diameter, mottled blue color, and having a narrow white strip super-

imposed over the blue color around the rim of the plate. A colorless glaze covers the entire article.

Collective exhibit 3, numbered 37, consists of fruit banks about the size of pears, and decorated in several colors, the opening for coins being at the top alongside the stem.

Exhibit 4, numbered 2250, is a dish 6¼ inches in diameter about the shape of an oatmeal or cereal saucer. It is composed of a rough reddish clay, with floral and bird designs on the inside in white and green. The inner portion of the dish only is glazed.

Exhibit 5, numbered 1969, is a small cream-colored pot with three feet, having a small hole in the bottom. It has the shape and appearance of an ordinary pot suitable for house plants.

Exhibit 6, numbered 1970, is also a small pot like exhibit 5, although more elaborately decorated.

Exhibit 7, numbered 447, is an ash tray shaped like a sombrero, highly decorated with cactus leaves in browns, reds, greens, and blues on a dark chocolate-colored background. The brim curls up slightly and the crown of the hat contains a dent suitable for resting a cigarette.

Exhibit 8, numbered 760, is a nest of three trays, the largest measures 3¾ x 3¼ inches; the smallest 2 x 2¼ inches. They are composed of a light reddish-colored clay, the inside being variously decorated with conventional designs in white, green, and brown, over which there is a glaze. The exterior of the trays is not glazed.

Exhibit 9, numbered 366, is a nest of five bowls composed of a reddish rough clay. The material is approximately an eighth of an inch thick and appears to be of fragile construction. The largest bowl is about 8 inches in diameter and about 3 inches high. The bowls fitting inside are, of course, each slightly smaller; the smallest measuring 3½ inches in diameter and 1½ inches high. The only decoration is a darker red rim, speckled with white, and the bowls are glazed only on the inside. The larger bowl contains two handles and the smaller ones, one handle each.

Exhibit 10, numbered 3116, is a water pitcher 11½ inches high and 9 inches in diameter at the largest part, tapering up to the neck to about 2 inches in diameter, and the foot measures 3½ inches across. A handle is attached extending from the top of the neck of the pitcher down to the center of the article. Indian designs in white, red, brown, and blue comprise the decorations. The article is composed of a rough gray-brown clay and is glazed on the outside.

Collective exhibit 11, numbered 304, consists of deep dishes, four to a set, one nested in the other. The largest is 11 x 9 inches and 2½ inches deep, inside measurement. Each dish is slightly smaller, the smallest measuring 6½ x 7 inches and 1½ inches deep, inside measurement. These dishes are heavily constructed of a white or very light

yellow clay. The inside is painted with conventional designs and Mexican scenes. The articles are glazed on both the inside and outside.

Exhibit 12, numbered 152, is a water jug made of light-colored clay. The body is round, 9 inches in diameter and 4 inches thick, having an oval-shaped pedestal, 4 x 3¼ inches and about an inch high. At the top of the jug there are two openings, the mouths of these openings extending at an angle from either side of the body of the jug, the rims thereof being connected over the top of the jug in such a manner as to form a handle. The background of the article is red clay. One flat surface contains a floral design in white, and the pedestal is painted white. A glaze extends over the entire article.

Exhibit 13, numbered 156, is a water bottle with a drinking mug over the neck of the bottle. The bottle and mug are decorated with Mexican Indian conventional designs in blue, white, yellow, green, and various browns and yellows. The bottle appears to have been highly glazed on both the inside and outside.

Exhibit 14, numbered 1008, is a flower vase or jar, standing about 9 inches high and ranging in diameter from 3 to 4½ inches. It has been roughly glazed on the inside and outside, the outside being decorated with Mexican scenes in several colors.

Exhibit 15, numbered 1781, is a large pig bank, composed of a light gray clay, containing painted decorations over which there is a slight glaze.

Exhibit 16, numbered 753, is a tureen made of rough red clay glazed on the inside and partly glazed on the outside. The cover is glazed on the outside but not on the inside. Conventional designs in brown, green, and white decorate the exterior portions. The article has a slight extension at either end suitable as handles, and the cover has a handle extending from the top.

Exhibit 17, numbered 3004, is a sombrero made of brownish-gray clay, not glazed. The rim extends upward three-fourths of an inch, and the crown of the hat is dented and suitable to act as a rest for a cigarette. The rim and the hat band are decorated in several colors.

Exhibit 18, numbered 1889, consists of figures, one a statuette of a man and a goat on a standard, and the other a man at work over a cactus plant. The figures are highly decorated in several colors.

The president of the importing company testified that the merchandise was either purchased by him personally or by his direction; that on several occasions he visited the village in which the articles were manufactured; that he had seen the pits or holes outside of the village from which the peasant digs his clay and carries it to his home; that these pits were not very deep and were 15 to 20 feet long; that the clay in the pits varied in color, according to the depth of the hole, from white or yellowish to a darkish-looking gray; that although

he did not observe the clay being taken from the pits and carried to the home of the peasants, he saw the piles of the same clay in the peasants' yards; that while watching them form the articles he saw them use the clay in its condition as removed from the pits; that all that was done was to take the clay from the pile, mix it with water and form the article by hand, apply decorations, and bake it in a home-made oven; that in watching the process of manufacture he did not see the peasants take two different types of clay and mix such types together before the material was kneaded; and that he was of the opinion that all the clay used by the peasants was taken from the pits because they had no other place to obtain it.

The witness further testified that he had been buying Mexican pottery since 1941 and had sold articles such as were here imported in all parts of the United States. He had seen some of the articles in use, such as exhibit 9, used in the kitchen for cooking; exhibits 5 and 6, as flower pots; exhibits 1 and 15, used by children to save coins; exhibits 7 and 17, as ash trays; exhibits 2 and 16 in use for the service of food; exhibit 14 as a flower jar or vase; and exhibit 10 for decorative purposes.

The examiner of Mexican pottery at the port of San Francisco for 30 years and acting appraiser for 5 years testified on behalf of the plaintiff that the articles of the general character of the exhibits in question before the court have been imported from Mexico ever since he had been in the service; that as an examiner he advisorily classified such articles as common pottery under various paragraphs of the tariff acts corresponding to paragraph 210 of the Tariff Act of 1930; and that the long-continued practice of so classifying the articles was discontinued during 1942 by the Bureau of Customs; that he had advisorily classified the merchandise in question as common red earthenware, basing his original advisory classification upon Customs Court decisions, decisions of the Bureau of Customs directing the various ports to so classify it under paragraph 210, and, in addition, he considered the type of the merchandise in comparison with the Customs Court decisions and the Bureau of Customs instructions; that the merchandise had to be of the same type, that is, he would differentiate between pottery of unwashed and unmixed clay and earthenware.

The witness further testified that he had investigated the uses of the merchandise, stating in that regard as follows:

Q. Prior to such classifications of the goods of this class that came under your jurisdiction, did you investigate the nature of the articles and their uses?—A. Yes; I have seen their uses for some years.

Q. And what did you find in that regard?—A. Well, as I say, these are getting fancier all the time, and the uses of them are more as ornaments than they are practical purposes, really.

Q. Are you including in that statement all of the exhibits, Mr. Read?—A. Not all of them, no; this article, Exhibit 12, and Exhibit 13; the remainder are all used commonly.

Q. For what? Utilitarian purposes?—A. Yes, utilitarian purposes.

Q. Now, when you say that in recent years they have been getting fancier, what do you mean by that? The decoration, or what?—A. Well, up until the last few years this merchandise had a finish more of this merchandise * * *.

Mrs. BENNETT. Call it by exhibit number.

A. Exhibit 13 had a finish on that order, more to the finish on Exhibit 9.

. Q. Back in 1930, Mr. Read, articles, regardless of the finish, of the form and style such as we have here—am I correct in assuming that in your experience they were commonly used for utilitarian purposes?

A. All but Exhibits 12 and 13.

Q. And would you also exclude Exhibit 18?—A. Yes; those are purely ornaments.

Q. 12, 13 and 18. Were you here when the previous witness testified?—A. Yes. [Record p. 62.]

*       *       *       *       *       . *       *

X Q. Mr. Read, are you familiar with the uses of the exhibits in this case which are on the tables before you?—A. Practically all of them, yes.

X Q. How did you become familiar with those uses?—A. Oh, I have seen them used.

X Q. In this country?—A. Yes. .

X Q. How many times have you seen them used? Many times or a few times?—A. Yes, many times. [Record p. 69.]

The questions before us in this case are, first, whether the articles are composed of a body wholly of clay which is unwashed, unmixed, and not artificially colored; second, whether the articles are common yellow, brown, red, or gray earthenware; and third, whether or not the articles are specially provided for by name in any other paragraph of the act.

The courts have held the terms "common yellow, brown, red, or gray earthenware" as subject to proof that the article to which applied is a usual or ordinary article.

In *Morimura Bros.* v. *United States*, G. A. 8318, T. D. 38256, it was held that it must be shown at the trial by affirmative testimony that an article is "common yellow, brown, or gray earthenware," and it was held insufficient to establish merely that the article was made of natural unwashed and unmixed clay.

In *Dow* v. *United States*, 11 Ct. Cust. Appls. 249, T. D. 39077, the merchandise consisted of statuettes of the Buddha and sticks of incense, imported together. As to the claim that the Buddha figures were common earthenware, the court stated:

* * * in the absence of any evidence to the contrary, we must assume that figures of Buddha set on bases, whether available for the burning of incense or otherwise, are in this country neither usual, customary, or ordinary articles of earthenware, not usually, customarily, ordinarily, or even frequently used, and

that, therefore, such figures even if made of the clay specified in paragraph 78, are not common within the meaning of the statute.

\* \* \* \* \* \* \*

\* \* \* the Buddhas, although they may be used as incense burners, are after all earthenware figurines, a class of statuettes, and as earthenware statuettes are specifically enumerated in paragraph 79, they can not be properly classified as common earthenware under paragraph 78.

In *Arconti Hardware Co.* v. *United States*, T. D. 49573, this court had before it the issue whether or not Mexican pottery articles were dutiable as common earthenware. A complete line of samples in evidence included water bottles, decanters, pitchers, water carafes, flasks, toy dishes and figures, mugs or water glasses, pig banks, vases, and ash trays. The merchandise was very similar to the articles before us in this case. Witnesses for both the importer and the Government in that case testified at length as to the use of the articles. The court there stated as follows:

\* \* \* Those objects which in our opinion in the first trial were ornaments, because of the absence of proof of utilitarian use common to the United States, have been shown in this trial to be ordinary articles of every day use in the home for utilitarian purposes and capable of such use, as well as articles common in appearance and form in the United States. Unless specially provided for elsewhere in the tariff act the articles the subject of importation should be classified under paragraph 210, as claimed by the plaintiff.

\* \* \* \* \* \* \*

We therefore hold that the items upon the invoice, such as water pitchers, water flasks, water carafes, pig banks, ash trays, and like articles, commonly used in the home for utilitarian purposes, are properly dutiable at the rate of 20 per centum ad valorem under paragraph 210; \* \* \*.

In the case of *Olive Read Creations* v. *United States*, Abstract 50426, certain pig banks and pig boxes, established to have been made from the ordinary adobe mud dug out of the peasants' yards, and mixed with water, molded and shaped by hand, and dried in the sun, were held to be unwashed, unmixed, and not artificially colored, and that they were common articles of earthenware in the United States.

The foregoing decisions disclose that "common" articles consist of such as are usually, customarily, or frequently used in the United States for everyday home use and are common or ordinary in appearance. The evidence is convincing that the articles before us are composed of a body wholly of clay which is unwashed, unmixed, and not artificially colored. The evidence is uncontradicted that the articles, insofar as they are represented by exhibits 1 to 18, inclusive, are commonly used for utilitarian purposes, except as to the articles represented by exhibits 10, 12, 13, 14, and 18. The president of the importing company testified that exhibit 10 was used for decorative purposes, and that exhibit 14 was a flower vase. The Government examiner testified that exhibits 12 and 13 are used for decorative pur-

poses, and that the articles in exhibit 18 were figures or ornaments. Inasmuch as paragraph 211, under which the merchandise was assessed, specifically provides for vases, mugs, cups, statuettes, and ornaments, the protest will be overruled as to any articles established to be within such *eo nomine* provisions.

The merchandise appearing on the invoices covers 42 different item numbers. The items which we find to be properly dutiable under paragraph 210 at 20 per centum ad valorem are listed on schedule "A," hereto attached and made a part hereof. The items which we find are not represented by samples, or are not adequately described, and items which are *eo nomine* provided for in paragraph 211, are listed on schedule "B," hereto attached and made a part hereof.

We therefore hold that the merchandise on the invoices covered by said schedule "A" is properly dutiable at 20 per centum ad valorem under paragraph 210, as claimed, and that the protest is overruled as to the merchandise on the invoices covered by schedule "B."

Judgment will therefore be entered partly in favor of the plaintiff, directing the collector to reliquidate the entries in accordance with our decision herein and make refund of duties taken in excess as to the items appearing on schedule "A" only. The protest is overruled as to the items appearing on schedule "B."